IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

GIUSTINA LAND & TIMBER CO., LLC;
CADORE TIMBER CO.; GIUSTINA
WOODLANDS LIMITED PARTNERSHIP;
GIUSTINA TREE FARMS LIMITED
PARTNERSHIP,

                    Plaintiffs,

      vs.

EUGENE WATER & ELECTRIC BOARD;
LANE ELECTRIC COOPERATIVE, INC.;
UNITED STATES DEPARTMENT OF
ENERGY; DOES 1–50,

                    Defendants.

_____

Civ. No. 6:24-cv-1152-AA

**OPINION & ORDER**

AIKEN, District Judge:

      Plaintiffs Giustina Land & Timber Co. LLC; Cadore Timber Co.; Giustina Woodlands Limited Partnership; and Giustina Tree Farms Limited Partnership bring negligence, trespass, nuisance, and gross negligence claims against Defendants Eugene Water & Electric Board ("EWEB"), Lane Electric Cooperative ("LEC"), Does 1–50; and the United States Department of Energy on behalf of Bonneville Power Administration ("BPA") under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* *See* First Am. Compl. ("FAC"), ECF No. 20.

      Defendant USA moves to dismiss the claims against it, ECF No. 24. Plaintiffs move for leave to file a sur-reply, ECF No. 39. All parties except Defendant USA

Page 1 – OPINION AND ORDER

move to consolidate this matter with *21st Century Centennial Insurance Co. et al. v. Bonneville Power Administration et al.*, Case No. 6:24-cv-00089-MK ("*21st Century*"). ECF No. 29.  For the reasons stated below, Defendant USA's Motion, ECF No. 24, is GRANTED, and Plaintiffs' Motion, ECF No. 39, is DENIED.  Plaintiffs' claims against Defendant USA are DISMISSED with prejudice.  The Motion to Consolidate, ECF No. 29, is GRANTED.

## BACKGROUND

Plaintiffs are a group of family-owned forest management companies who bring claims against Defendants, utility companies, for losses suffered from the September 7, 2020, Holiday Farm Fire ("the Fire") in the McKenzie River Valley ("the Valley") of eastern Lane County.  FAC ¶¶ 8–12.  Plaintiffs allege that they lost "a combined 17,000 acres of land and timber[,] . . . approximately 10% of the total acres burned by the [Fire]."  *Id.* at ¶ 8.

Plaintiffs allege that in September 2020, "extreme" fire conditions existed in the Valley, *id.* at ¶ 2, and that the National Weather Service had forecast the arrival of hot dry winds "in excess of 60 miles per hour" to the Valley on September 7, 2020, *id.*, and had warned that the winds would create an "extremely critical" fire risk, *id.* Plaintiffs allege that Defendants EWEB, LEC, and BPA "own, operate and maintain high-voltage powerlines" that run through the Valley.  *Id.* at ¶¶ 26, 13–15, 25. Plaintiffs allege that EWEB, LEC, and BPA "create[d] a public wildfire risk" by failing to properly manage vegetation and "Danger Trees" close to their powerlines,

*id.* at ¶ 34, and by failing, on September 7, 2020, to "preemptively deenergize their powerlines[,]" *id.* at ¶¶ 4, 17, 20, 38.

Plaintiffs allege that, although "no official fire report is known to have been released by any investigating governmental agency[,]" *id.* at ¶ 18, that the Fire was caused by trees falling on powerlines, *id.* at ¶¶ 17–18. Plaintiffs allege that "the primary point of ignition[,]" *id.* at ¶ 23, was "identified . . . by first responders, witnesses and the media" as near milepost ("MP") 47 on Highway 126 near the Holiday Farm RV Resort, Pl. Resp. at 2, ECF No. 34, and that the approximate time of ignition was 8:10 pm on September 7, 2020, *id.*, FAC ¶ 23. Plaintiffs allege that the ignition at MP 47 was caused by "a tree or trees . . . [that] fell across EWEB powerlines[,]" *id.* at ¶ 17, causing those powerlines "to sag and move closer" to the LEC powerlines that crossed below them, *id.* at ¶ 21.

Plaintiffs also allege that "other unknown or undiscovered points of ignition could have also existed . . . including an earlier fire starting downriver near MP 43 under the BPA powerlines[,]" *id.* at ¶ 23, which ignited "when a tree fell upon BPA powerlines at approximately 5:25 pm[,]" on September 7, *id.* at ¶¶ 18, 23.

Not quite two years later, on August 5, 2022, Plaintiffs filed suit in state court against Defendants EWEB and LEC. Pl. Resp. at 3. In that suit, Plaintiffs alleged that the Fire's ignition point was at MP 47 under EWEB's and LEC's powerlines. *Id.*; FAC ¶ 15. Plaintiffs did not name BPA as a defendant in their state suit. *Id.*

Plaintiffs allege that "on or about August 30, 2022, and September 7, 2022," *id.* at ¶ 15, Defendants EWEB and LEC each filed administrative tort claims with

BPA and attached a copy of the complaint filed by Plaintiffs in the state court case against EWEB and LEC.  Pl. Resp. at 3.  At that time, unlike EWEB and LEC, Plaintiffs themselves had not filed any administrative claims with BPA.  *Id.*

Plaintiffs allege that on June 14, 2023, during the deposition of witness David Murphy in their state case, Plaintiffs discovered information about "a potential fire starting . . . at approximately 5:15 pm on September 7, 2020, . . . at about milepost 43 . . . where powerlines owned and operated by BPA were located."  Pl. Resp. at 3; FAC ¶ 15.  Plaintiffs allege that "[i]t was not until June of 2023, . . . that Plaintiffs received [sufficient] information" that a fire at MP 43 under the BPA powerlines "may have caused or contributed to their injuries."  Pl. Resp. at 8.  Plaintiffs filed a tort claim with BPA on December 21, 2023, more than three years after the Fire.  FAC ¶ 15; Pl. Resp. at 5.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  When evaluating the sufficiency of a complaint's allegations, a court must accept a plaintiff's allegations of fact as true and construe them in the light most favorable to the plaintiff.  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).  But a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation" of the elements of a cause of action.  *Id.* at 555 (cleaned up).

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the [complaint's] allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

## DISCUSSION

Plaintiffs bring negligence, trespass, nuisance, and gross negligence claims against the United States, on behalf of BPA, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*  Defendant "moves to dismiss all claims against it because Plaintiffs failed to submit administrative claims to the [BPA] within two years of the alleged damages."  Def. Mot. at 2.

The requirement of an administrative claim under 28 U.S.C. § 2675(a) is jurisdictional and "must be strictly adhered to."  *Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir. 1995).  "This is particularly so since the FTCA waives sovereign immunity."  *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992) "Any such waiver must be strictly construed in favor of the United States."  *Id.* (quoting *Ardestani v. United States*, 502 U.S. 129, 137 (1991)).

I.   *Date of Accrual*

The parties dispute when Plaintiffs' claims accrued, which determines whether they are timely.  "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]"  28 U.S.C. § 2401(b).  A claim accrues "when a plaintiff knows or has reason to know of the injury which is the basis of his action."  *Hensley v. U.S.*, 531 F.3d 1052, 1056 (9th Cir. 2008).

Defendant argues that "Plaintiffs' claims accrued on or about the time the Holiday Farm Fire ignited and allegedly damaged their timber in September 2020."  Def. Mot. at 6.  Defendant asserts that "[t]he two-year period to present a claim to [BPA] began then and expired in September 2022."  Def. Reply at 2, ECF No. 36.  "Plaintiffs did not file a claim with BPA until 15 months later in December 2023."  *Id.*

Plaintiffs argue that their "claims . . . began accruing on June 28, 2023[,]" not September 7, 2020.  Pl. Resp. at 7.  Plaintiffs rely on *United States. v. Kubrick*, 444 U.S. 111, 120–122 (1979) for the proposition that under the FTCA, "a claim accrues when the plaintiff discovers the injury *and* its cause."  Pl. Resp.at 8 (emphasis in Pl. Resp.).  Plaintiffs argue that "[a] plaintiff discovers the cause of his or her injury when in possession of essential facts regarding causation[,]" *id.*, and that Plaintiffs "did not discover essential facts supporting the possibility of another . . . fire [under BPA powerlines] . . . until June 28, 2023[,]" *id.*  Those essential facts include information from a witness deposition, a BPA response to a FOIA request, and "other materials" that Plaintiffs did not receive until June 2023.  *Id.*

Plaintiffs' reliance on *Kubrick* is misplaced.  In *Kubrick*, the question was whether an FTCA medical malpractice claim accrues when a plaintiff discovers his injury and its cause or at a later time when the plaintiff discovers his legal rights, *i.e.*, that plaintiff has grounds for a malpractice claim.  *Kubrick*, 444 U.S. at 113. *Kubrick* not only addressed a different question than here, but it also involved a medical malpractice claim.  *Kubrick*'s medical malpractice discovery rule does not apply to general tort claims.  While a medical malpractice claim accrues when "the plaintiff has discovered both his injury and its cause[,]" a general "tort claim accrues at the time of the plaintiff's injury[.]"  *Id.* at 120.   In *Kubrick*, the Court explained that medical malpractice cases require a discovery rule because the limitations period is too short for "the consequences of medical malpractice . . . to become known[,]" and, because "the nature of the tort itself and the character of the injury" force the "plaintiff . . . to rely upon what he is told by the physician or surgeon." *Id.* at 120 n.7 (quoting Restatement (Second) of Torts § 899 cmt. e (Am. L. Inst. 1979)); *see also Hensley*, 531 F.3d at 1056 ("In certain circumstances, such as claims involving medical malpractice, accrual does not occur until a plaintiff knows of both the existence of an injury and its cause" but, the "general rule" is that a tort claim accrues "when a plaintiff knows or has reason to know of the injury which is the basis of his action.").

In *Gibson v. United States*, 781 F.2d 1334, 1344, (9th Cir. 1986), which is analogous to the case here, the Ninth Circuit declined to extend the *Kubrick* discovery rule to a non-medical malpractice FTCA claim.  In *Gibson*, plaintiffs' garage was

destroyed by a fire in January 1974.  *Id.* at 1343.  In 1977, plaintiffs learned from an investigative journalist that an FBI agent had intentionally set fire to the garage.  *Id.* In 1979, plaintiffs filed a FTCA claim against the FBI for damages to the garage and its contents.  *Id.*  They argued that their claim did not accrue until 1977, when they learned that the FBI agent had set fire to their garage.  *Id.* at 1343–44.  The court disagreed and instead held that plaintiffs' claim accrued when they learned that the garage had been destroyed in a fire: "[T]he incident alone immediately alerted them to the fact of their injury, *i.e.,* the destruction of Gibson's property, and its cause, fire." *Id.* at 1344.  The court directly addressed the issue raised by Plaintiffs here and declined to extend *Kubrick*'s discovery rule to a general torts claim.  *Id.*

Likewise, in *Dyniewicz v. United .States*, 742 F.2d 484, 485 (9th Cir. 1984), the court dismissed an untimely FTCA claim filed by plaintiffs in a wrongful death action when plaintiffs discovered, two years after a flash flood had swept their parents' car off a road, that national park rangers had improperly failed to close the road in advance of the forewarned flash flood.  The court explained that "the general rule in tort law is that the claim accrues at the time of the plaintiff's injury[,]" and that "the 'cause' is known when the immediate physical cause of the injury is discovered."  *Id.* at 486.  The *Dyniewicz* plaintiffs "knew both the fact of injury and its immediate physical cause, the flooded highway, when the bodies of [their parents] were found." *Id.* at 487.  Further, "[d]iscovery of the cause of one's injury . . . does not mean knowing who is responsible for it."  *Id.* at 486.  "Ignorance of the involvement of United States employees is irrelevant." *Id.* at 487; *see also Hensley*, 531 F.3d at 1057 ("accrual of an

FTCA claim is not delayed until the injured party learns of possible government liability"); *Steele v. United States*, 599 F.2d 823, 827–28 (9th Cir. 1979) (plaintiff's assertion that "he neither knew, nor in the exercise of reasonable diligence could have known" about the government's possible liability for his injury was irrelevant to FTCA claim accrual); *Davis v. United States*, 642 F.2d 328, 331 (9th Cir. 1981) ("In the absence of fraudulent concealment it is plaintiff's burden, within the statutory period, to determine whether and whom to sue.").

Plaintiffs argue that *Dyniewicz* is "easily distinguished from the facts here because [there], the question was who caused the claimants' injuries, whereas here, the question is *what* caused Plaintiffs' injuries[]," and, in *Dyniewicz*, "there was no discussion regarding alternative causes." Pl. Resp. at 10 (emphasis in original). But Plaintiffs' distinction, who versus what, does not change the "immediate physical cause" of Plaintiffs' injuries—the Fire itself. *Dyniewicz*, 742 F.2d at 485. Plaintiffs urge the Court to trace the causal chain back one step to the cause or causes of the Fire, but that is not consistent with the case law. Regardless of whether the Fire's cause is characterized as a what (an alternative cause) or a who (BPA) and regardless of whether the Fire had a single cause or multiple causes, only the immediate physical cause of the harm—the Fire itself—is relevant to the accrual of a general tort claim under the FTCA.

In sum, Plaintiffs bring general tort claims, not a medical malpractice claim, under the FTCA. Because general tort claims accrue when a plaintiff discovers the injury and its *immediate physical cause,* Plaintiffs' claims accrued in September 2020,

the date of the Fire.  The fact that Plaintiffs did not learn of a possible additional or alternative ignition site until June 2023 is irrelevant under the caselaw.  Given the FTCA's two-year limitations period, Plaintiffs had until September 2022 to present their claims to BPA but did not present their claims until fifteen months beyond the limitation periods, in December 2023.  Plaintiffs' claims are thus untimely.

## II.    *Presentation via EWEB and LEC Claims*

Unlike Plaintiffs, Defendants EWEB and LEC filed tort claims with BPA by September 2022.  Pl. Resp. at 3, 7, 11.  EWEB and LEC filed their claims via Standard Form 95 and attached a copy of Plaintiffs' complaint from the state court case.  *Id.* at 11.  Plaintiffs argue that the complaint attached to EWEB's and LEC's claims provided Defendant with "enough information regarding Plaintiffs' claims to satisfy . . . the [FTCA] presentment requirements under 28 U.S.C. 2675(a)."  *Id.*

The FTCA presentment requirement, 28 U.S.C. § 2675(a), dictates that "an action shall not be instituted upon a claim against the United States" for money damages for loss of property caused by the negligent or wrongful act or omission of any Government employee acting in the scope of his employment, "unless the claimant shall have first presented the claim to the appropriate Federal agency[.]"  "Section 2675(a) establishes explicit prerequisites to the filing of suit against the Government in district court.  It admits of no exceptions."  *Cadwalder*, 45 F.3d at 300.

Here, Plaintiffs argue that third parties EWEB and LEC essentially submitted a claim on Plaintiffs' behalf.  But, under § 2675, only a claimant or a third party who has legal authority to act on a claimant's behalf can file an FTCA claim with the

Page 10 – OPINION AND ORDER

appropriate Federal agency. *Id.* at 301. In *Cadwalder*, ranch-owner plaintiffs submitted an FTCA claim for ranch damages from a fire that started on nearby United States land. *Id.* at 298. But at the time of the fire the ranch was held in trust, and the trustee had not filed an FTCA claim. *Id.* Plaintiffs argued that their claim was sufficient to give notice (and satisfy the presentment requirement) for the ranch damages. *Id.* at 298–99. The court held that the plaintiffs' claim failed because the trustee had not filed its own claim, and "there [was] no indication that [plaintiffs] had legal authority to act on behalf of [the trustee.]" *Id.* at 301.

Likewise, here. EWEB and LEC submitted their own claims and there was no indication that either entity had legal authority to act on Plaintiffs' behalf. In fact, given that Plaintiffs are on the opposite side of a court case from EWEB and LEC, their interests conflict; it would be highly improper for EWEB and LEC to act on Plaintiffs' behalf.

Plaintiffs rely on *Shipek v. United States*, 752 F.2d 1352, 1354 (9th Cir. 1985) to argue that the complaint attached to EWEB's and LEC's claims provided the government sufficient notice of Plaintiffs' claims because "notice requirements under section 2675(a) are 'minimal[.]'" Pl. Resp. at 12. The Court agrees that FTCA notice requirements are minimal. But here the Court does not reach that question. In *Shipek*, the plaintiff, the true claimant, submitted the claim herself, not via a third party. *Shipek*, 752 F.2d at 1353. There was no question that she satisfied the presentment requirement. *Shipek* addresses the content of a claim, how much information a claimant must provide on Standard Form 95 to give the United States

sufficient notice to start investigating that claim. *Id.* at 1354. Here, the Court addresses the threshold question—*who* can properly present a claim—a question the *Shipek* court had no need to address. Plaintiffs' reliance on the *Shipek* line of cases is thus not on point.

In sum, only a claimant or a claimant's legal representative may submit a claim under the FTCA's presentment requirement, section 2675(a). Here, even if EWEB and LEC intended to submit a claim on Plaintiffs' behalf, they had no legal authority to do so. The attached state court complaint does not satisfy the FTCA presentment requirement for Plaintiffs.

III. *Equitable Tolling Doctrines*

Plaintiffs argue that they are "entitled to equitable tolling" of the FTCA limitations period because "extraordinary circumstances beyond Plaintiffs' control prevented them from filing their administrative claims against BPA two years after the date of the start of the Holiday Farm Fire[,]" Pl. Resp. at 15, and because "Defendant USA concealed and continues to conceal information regarding its potential involvement in the Holiday Farm Fire[,]" *id.* at 19.

"[T]he FTCA's time bars are nonjurisdictional and subject to equitable tolling." *United States v. Wong*, 575 U.S. 402, 420 (2015). Generally, a party who seeks to equitably toll a federal statute of limitations bears the burden to establish: "(1) that [they] ha[ve] been pursuing [their] rights diligently, and (2) that some extraordinary circumstances stood in [their] way." *Redlin v. United States*, 921 F.3d 1133, 1140 (9th Cir. 2019) (applying the equitable tolling doctrine to an FTCA claim). Equitable

tolling may also apply "where the party invoking the doctrine 'has been induced or tricked by [their] adversary's misconduct into allowing the filing deadline to pass[.]'" *Hensley*, 531 F.3d at 1057–58 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

A.     *Extraordinary Circumstances*

Under the equitable tolling doctrine, a party must first show that they have "purs[ed] [their] rights diligently." *Redlin*, 921 F.3d at 1052. "[R]easonable diligence . . . requires the effort that a reasonable person might be expected to deliver under [their] particular circumstances." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013). But "[t]he doctrine is not available to avoid the consequence of one's own negligence and does not apply when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights." *Redlin*, 921 F.3d at 1140. Indeed, a party who seeks equitable tolling must also show that "extraordinary circumstances were the cause of [their] untimeliness and made it impossible to file the document on time." *Kwai Fun Wong*, 732 F.3d at 1052 (cleaned up). "Accordingly, [e]quitable tolling is typically granted when litigants are unable to file timely [documents] as a result of external circumstances beyond their direct control." *Id*.

Plaintiffs assert that they "pursued their rights diligently from the date of the Holiday Farm Fire" because they engaged counsel, hired experts to determine the cause of the Fire, and filed a suit against EWEB and LEC in state court. Pl. Resp. at 15. Plaintiffs argue that "the scale and scope" of the "massive and complex" Fire "ma[de] it incredibly difficult to investigate and [to] ascertain what started it and

where—especially for private parties." *Id.* at 18.  Plaintiffs cite several factors that led them to not discover a possible second ignition point under the BPA lines: (1) their investigation "did not indicate a fire other than the fire at MP 47[,]" *id.* at 16; (2) "statements of first responders, witnesses, the reporting in the media[,]" pointed only to the EWEB and LEC powerlines, *id.*; (3) BPA denied that "their equipment caus[ed] any fires[,]" *id.*; (4) the USDA's October 30, 2020 Burned Area Emergency Response report pointed to ignition at MP 47, *id.*; and (5) "no official fire report on the cause ha[d] yet been issued by the investigating agencies[,]" *id.*

Plaintiffs rely on *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) for the proposition that "an extraordinary circumstance can be the fact that a claimant lacks access to information necessary for making a timely filing."  Pl. Resp. at 17.  In *Ramirez*, a prisoner who missed a habeas filing deadline argued that it was impossible to timely file his habeas petition because he had been placed in administrative segregation and was denied access to his legal file.  *Ramirez*, 571 F.3d at 998.  The court agreed that "a complete lack of access to a legal file may constitute an extraordinary circumstance" because it is "'unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period without access to his legal file.'"  *Id.* (quoting *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027 (9th Cir. 2005)).

Defendant argues that "Plaintiffs allege no 'extraordinary circumstances' that justify overcoming the United States' sovereign immunity . . . especially . . . where

LEC and EWEB presented their claims within two years of [the Fire]. . . along with over 2,000 other [p]laintiffs[.]"  Def. Reply at 3; Norris Decl. ¶ 2, ECF No. 37.

The Court agrees.  Equitably tolling a federal statutory limitations period "is a high bar" and "will be unavailable in most cases."  *Quick Korner Market v. U.S. Dep't of Agriculture, Food and Nutrition Svc.*, 180 F. Supp. 3d 683, 692 (S.D. Cal. 2016) (internal quotation marks and citation omitted); *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir 2002) (("[T]he threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions swallow the rule."); *see also Menominee Indian Tribe of Wisconsin v. United States,* 577 U.S. 250, 257 (2016) ("[T]he second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control.") (emphasis in original).  Here, Plaintiffs do not reach that high bar because nothing in the record suggests that an intervening external circumstance beyond Plaintiffs' control made it impossible for them to file a claim within the two-year limitations period.[1]  Lack of information is not an extraordinary circumstance.

---

[1] Equitable tolling is a rare remedy.  Equitable tolling due to extraordinary circumstances is justified only where plaintiffs show both reasonable diligence throughout the filing period and an intervening external circumstance beyond their control that made timely filing impossible.  *See*, *e.g.*, *Juarez v. United States*, No. 22-CV-1116-GPC-DEB, 2023 WL 2316201, at *4 (S.D. Cal. Mar. 1, 2023) (equitably tolling the FTCA limitations period for four days where an electronic filing system was down and failed to notify the filer that the fee and documents had been rejected); *Harris v. Carter,* 515 F.3d 1051, 1055–56 (9th Cir. 2008) (equitably tolling the habeas filing period where petitioner pursued post-conviction relief in state court which tolled habeas limitations period under circuit precedent and where an intervening Supreme Court decision overruled that precedent and would have precluded petitioner from filing because the limitations period had already run).

In *Ramirez*, it was the petitioner's placement in administrative segregation, a protective form of solitary confinement, that made it impossible for the petitioner to file a habeas petition because he could not access necessary legal resources. Unlike *Ramirez*, Plaintiffs here had access and did access legal and other resources. They hired counsel and a fire investigator and engaged in discovery in their state court case. Plaintiffs knew that BPA owned and operated powerlines that ran through the Valley. The September 15, 2020, Oregonian article filed by Plaintiffs makes clear that, from the outset, BPA's potential involvement in the Fire was being discussed publicly. Lusby Decl., Ex. A, ECF No. 35. The article cites utilities LEC and BPA, both of whom denied having information about whether their powerlines started the Fire. Ex. A at 5, 7. And despite resident reports about what happened near MP 47—the location of the EWEB and LEC powerlines—the article states, consistent with Plaintiffs' allegations, that officials "have yet to identify the cause" of the Fire. *Id.* at 3. Finally, although EWEB and LEC were disadvantaged by the same confusing media and witness reports and the same lack of definitive information about the Fire's cause, they filed claims with BPA by September 2022. And Plaintiffs knew, at least by September 2022, that EWEB and LEC had done so. Here, Plaintiffs do not reach the high bar required to justify equitable tolling because they provide no evidence that an intervening external circumstance beyond their control made timely filing impossible.

B.    *Fraudulent Concealment*

Plaintiffs also allege that they are entitled to equitable tolling because "Defendant USA concealed and continues to conceal information regarding its potential involvement in the Holiday Farm Fire." Pl. Resp. at 19.

"A fraudulent concealment defense requires a showing both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of action." *Wood v. Santa Barbara Chamber of Com., Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983); *see also Irwin*, 498 U.S. at 458 (Courts have allowed tolling "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."). To make a fraudulent concealment claim, a plaintiff must allege facts showing "affirmative conduct by the United States which would, under the circumstances of this action, lead a reasonable person to believe that she did not have a claim for relief." *Keller v. United States*, No. CV-11-02345-PHX-PGR, 2017 WL 3719878, at *5 (D. Ariz. Aug. 29, 2017), *aff'd*, 788 F. App'x 543 (9th Cir. 2019) (citing *Gibson*, 781 F.2d at 1345).

Plaintiffs allege that Defendant "concealed and continues to conceal information regarding its potential involvement [in the Fire,]" Pl. Resp. at 19, because Defendant "launched a forensic investigation shortly after [the Fire,]" *id.* at 20, but "has withheld investigative findings regarding its involvement in [the Fire,]" *id.*

Defendant argues that "Plaintiffs were free to hire their own forensic investigator, and indeed, they allege they hired 'qualified experts' to investigate the Holiday Farm Fire." Def. Reply at 10.

Without more, Plaintiffs have not alleged sufficient facts to show that Defendant USA committed affirmative fraudulent acts to induce Plaintiffs to refrain from filing a timely claim. That BPA investigated whether their powerlines may have been implicated in the Fire and failed to release results of that investigation to Plaintiffs or to the public is not enough. Government silence is not an affirmative act of fraudulent concealment. *See Dyniewicz*, 742 F.2d at 487 ("If the Government has been negligent, it has no general duty to announce that fact to the world at large. There are no grounds for tolling the [FTCA's] statute of limitations based simply on the Government's knowledge of its own wrongdoing absent fraudulent concealment[.]"); *see also Hensley*, 531 F.3d at 1057 ("[E]ven the government's silence concerning the possible negligence of the [government's alleged tortfeasors] did not toll the statute of limitations in the absence of fraudulent concealment."). To toll the limitations period, Plaintiffs must allege that the government committed affirmative fraudulent acts to prevent Plaintiffs from discovering their cause of action, and Plaintiffs have not done so. Plaintiffs do not allege that Defendant altered or destroyed evidence that impaired Plaintiffs' fire investigation or that Defendant otherwise committed an affirmative fraudulent act that tricked or induced Plaintiffs to refrain from filing a timely claim.

In sum, Plaintiffs failed to exhaust their administrative remedies under the FTCA, and they do not plead sufficient grounds to justify equitable tolling, either due to extraordinary circumstances or fraudulent concealment.

IV.    *Plaintiffs' Motion for Leave to File Sur-Reply*

Plaintiffs request leave to file a sur-reply. *See* ECF No. 39. "[A]cceptance or rejection of argumentative briefs, memoranda, and other supplementary material is within the sound discretion of the court." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1314 (9th Cir. 1982). "A district court may allow a sur[-]reply to be filed, but only where a valid reason for such additional briefing exists[.]" *Bowell v. Montoya*, No. 1:17-cv-00605-LJO-GSA-PC, 2019 WL 1469486, at *2 (E.D. Cal. Apr. 3, 2019). For example, a valid reason exists "[w]hen a party has raised new arguments or presented new evidence in a reply to an opposition[.]" *Oregon Nat. Desert Ass'n v. Cain*, 17 F. Supp. 3d 1037, 1048 (D. Or. 2014).

Here, Plaintiffs seek to file a sur-reply to respond to (1) BPA's new argument that because 2,200 other Fire-related claims were filed with BPA, Plaintiffs "could have ascertained the existence of an earlier fire" at or near MP 43, Pl. Mot. Sur-Reply. at 2, and (2) BPA's "second new argument" that to sufficiently plead grounds for equitable tolling, "Plaintiffs must show why the deadline to file their administrative claims should be tolled until December 21, 2023[,]" *id.*

Defendant opposes Plaintiffs' Motion for Leave to File Sur-Reply because (1) "[t]he 2,200 administrative tort notices [to BPA] are superfluous to the pending

Motion to Dismiss[,]" Def. Opp. Sur-Reply at 3, ECF No. 42, and (2) "[Defendant] has not asserted any contested matter for the first time in its [R]eply[,]" *id.* at 2.

The Court agrees that Defendant raised the fact of the 2,200 other BPA claims for the first time in its Reply brief. However, the Court did not rely on that evidence to determine that Plaintiffs do not allege sufficient facts of extraordinary circumstances to justify equitable tolling. Within the two-year limitations period, Plaintiffs undertook their own investigation of the Fire's cause, Plaintiffs knew that BPA powerlines ran through the Valley and that BPA was, from the start, a part of the conversation about how the Fire started. Plaintiffs filed a state court case and knew that EWEB and LEC filed claims with BPA by September 2022. That Plaintiffs were focused on one ignition point at MP 47 did not prevent them from discovering, like EWEB and LEC, the possibility of another ignition point at MP 43.

Second, Plaintiffs object to Defendant's statement that "Plaintiffs must show why the [FTCA limitations] deadline should be tolled until December 21, 2023[.]" Pl. Mot. at 2. Plaintiffs assert that this is a new statement and that it is not accurate. They argue that they only need show "that they were reasonably diligent after the extraordinary circumstances abated." *Id.* at 2–3. Because the Court determined that Plaintiffs do not plead sufficient facts to show that they faced extraordinary circumstances, a sur-reply on this point would not be helpful.

For the above reasons, the Court denies Plaintiffs' Motion for Leave to File a Sur-Reply.

V.    *Plaintiffs' Request for Leave to Amend*

Plaintiffs request that they be "granted leave to amend their [FAC] to the extent necessary to clarify the allegations contained within Plaintiffs' [FAC]." Pl. Resp. at 21.

Generally, Federal Rule of Civil Procedure 15 "advises the court that leave shall be freely given when justice so requires[]" . . . and that "[t]his policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).

"Dismissal without leave to amend is proper only if it is clear . . . that the complaint could not be saved by any amendment." *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003) (internal quotation marks and citations omitted). A "proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997) (citation omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001).

Here, Plaintiffs failed to exhaust their administrative remedies under the FTCA because their tort claims were not timely, and Plaintiffs plead insufficient facts to justify equitable tolling. There is no set of facts that would rectify the missed deadline or justify equitable tolling in these circumstances. Because amendment of Plaintiffs' FAC would be futile, the Court denies Plaintiffs' request for leave to amend.

VI.    *Motion to Consolidate*

All parties to this case, with the exception of Defendant USA, jointly move to consolidate this matter with the previously consolidated Holiday Farm Fire cases, under lead case *21ˢᵗ Century Centennial Insurance Co. et al. v. Bonneville Power Administration et al.*, Case No. 6:24-cv-00089-MK ("*21st Century*").  ECF No. 29.

Federal Rule of Civil Procedure 42(a) authorizes courts to consolidate actions involving "common question[s] of law or fact."  The court may consolidate for hearing or trial any and all matters at issue, including the entire case.  *Id.*  "In making this determination, the court must weigh 'the interest in judicial convenience against the potential delay, confusion, and prejudice caused by consolidation.'"  *Evraz Inc., N.A. v. Travelers Indem. Co.*, Case No. 3:11-cv-00233-AC, 2013 WL 6241984, at *1 (D. Or. Dec. 3, 2013) (quoting *Paxonet Commc'ns, Inc. v. TranSwitch Corp.*, 303 F. Supp.2d 1027, 1028 (N.D. Cal. 2003)).  "The purpose of 42(a) is to improve trial court efficiency by avoiding unnecessary duplication of evidence and procedures and to avoid the risk of inconsistent adjudications."  *Wilson v. HGC, Inc.*, Case No. 3:16-cv-64-SI, 2016 WL 4432690, *1 (D. Or. Aug. 18, 2016).  The district court has broad discretion to decide whether to consolidate cases.  *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987).  Under the Local Rules for the District of Oregon, "[u]nless otherwise directed by the court, the earliest filed consolidated case will be designated as the lead case for administrative control and case management purposes."  LR 42-4(a).

Here, the Court has dismissed the claims against Defendant USA.  The remaining parties are not opposed to consolidation.  The Court has reviewed the

Page 22 – OPINION AND ORDER

Motion and concludes that, in light of the close factual and legal relationship between the cases, consolidation is merited. The Court therefore grants the Motion to consolidate this case with *21st Century*. Consistent with LR 42-4(a), the earlier filed case, 6:24-cv-00089-MK, is the lead case for administrative control and case management purposes.

## CONCLUSION

For the reasons stated above, Defendant USA's Motion, ECF No. 24, is GRANTED, and Plaintiffs' Motion, ECF No. 39, is DENIED. Plaintiffs' claims against Defendant USA are DISMISSED with prejudice. The remaining parties' unopposed Motion to Consolidate this matter with *21st Century*, ECF No. 29, is GRANTED.

It is so ORDERED and DATED this  30th  day of April 2025.


 /s/Ann Aiken
ANN AIKEN
United States District Judge

Page 23 – OPINION AND ORDER